1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

14

JOHN K FRICK and NARAD RAO,

Plaintiffs,

v.

LOCAL 23 OF THE
INTERNATIONAL LONGSHORE
AND WAREHOUSE UNION and
PACIFIC MARITIME
ASSOCIATION,

Defendants.

C12-2224 TSZ

ORDER

15   THIS MATTER comes before the Court on Defendant Local 23 of the

16   International Longshore and Warehouse Union's motions for summary judgment, docket

17   nos. 19 and 20, and Defendant Pacific Maritime Association's motion for summary

18   judgment, docket no. 25.  Having reviewed all papers filed in support of, and in

19   opposition to, the motions, the Court enters the following Order.

20   **Background**

21   Plaintiffs John Frick and Narad Rao are longshore workers who suffered on-the-

22   job brain injuries on separate occasions in 2005.  Plaintiffs claim that Defendants violated

23

ORDER - 1

the Americans with Disabilities Act ("ADA") by failing to timely provide requested accommodations.  The underlying facts are generally not in dispute.

**A. Longshore Worker Industry**

Defendants in this suit are Pacific Maritime Association (PMA) and Local 23 of the International Longshore and Warehouse Union (Local 23).  PMA is an employer association representing employers who hire longshore workers, including the companies each Plaintiff worked for at the time of his injury.  The International Longshore and Warehouse Union ("ILWU") is a labor organization representing employees engaged in the longshore industry, and Local 23 of the ILWU represents employees in the Pierce County area, including Plaintiffs.  PMA and Local 23 operate under a collective bargaining agreement governing the employment of longshore workers at Pacific coast ports.

Longshore workers are generally dispatched to work on a daily basis from a jointly run ILWU/PMA dispatch hall.  Work is assigned in accordance with a seniority system, with "A-registered" workers having priority over "B-registered" and "casual" workers.  Both Plaintiffs were B-registered workers at the time of their injuries.  B-registered workers must work 70% of the average monthly hours to remain registered unless excused ("the availability rule") and must accept dispatch to skilled jobs ("the skill rule").  If a B-registered worker rejects a job, he must wait 23 hours before being eligible for dispatch again ("the 23-hour rule").

At a local level, the Joint Port Labor Relations Committee ("JPLRC") is the joint labor-management committee that is responsible for overseeing the accommodation

ORDER - 2

1   process.  The JPLRC consists of an equal number of PMA and ILWU representatives.

2   Decisions of the JPLRC are subject to review by the Joint Coast Labor Relations

3   Committee.

4        **B.  Plaintiff John Frick**

5        On August 24, 2005, Plaintiff John Frick suffered an on-the-job traumatic brain

6   injury while working at Terminal Maintenance Corporation ("TMC"), a member of

7   PMA.  Mr. Frick returned to work at TMC for a period of time in February and March,

8   2006.  The parties dispute whether Frick's work at TMC during this period was

9   satisfactory.  Defendants contend that Mr. Frick was slow and forgetful, his work had to

10  be reviewed regularly, and lead mechanic Scott Zander and others at TMC were worried

11  that he might hurt himself or others.  Zander Decl., docket no. 22, at ¶¶ 4-7.  Mr. Frick

12  states that although it took him longer to complete paperwork, no one had to review his

13  work, he was never told his work was below expectations, and Scott Zander never shared

14  any concerns about safety with him.  Frick Decl., docket no. 37, at ¶¶ 6-10.  The parties

15  also dispute the circumstances surrounding Mr. Frick's layoff in March, 2006.  These

16  facts are not material for purposes of this summary judgment motion.

17       By letter dated May 19, 2006, Mr. Frick submitted a request for accommodations

18  to the JPLRC.  Ewan Decl., docket no. 21, Ex. 3.  Mr. Frick indicated that his limitations

19  included difficulties with multi-tasking, short term memory, concentration, and

20  communication when tired or stressed.  Id.  Mr. Frick requested that he be allowed to

21  attempt tasks he had done before, be allowed to leave if problems arise, and have the skill

22  rule and 23-hour rule waived.  Id.  Mr. Frick also asked to be allowed to have the "five

23

1 shifts a week requirement" waived, id., which appears to be a reference to the availability

2 rule.

3      On June 23, 2006, the JPLRC met with Mr. Frick to discuss the accommodation

4 request, and referred Mr. Frick to the University of Washington Medical Center

5 Department of Rehabilitation Medicine ("UW") for further evaluation.  Lizama Decl.,

6 docket no. 28, Ex. 2(c)-(d).  On July 17, 2006, Jennifer Disotell of PMA emailed Ms.

7 Ball and Dr. Johnson of the UW to ask about the status of Mr. Frick's evaluation.  Ball

8 Decl., docket no. 24, at ¶ 4.  Ms. Ball replied on July 26, 2006, informing Ms. Disotell on

9 where Mr. Frick was in the process.  Id.  Mr. Frick's first appointment with UW was

10 scheduled for August 3, 2006.  Id.

11      On August 3, 2006, Mr. Frick met with Dr. Kathleen Bell at UW for a physical

12 examination.  Id. at ¶ 6.  Dr. Bell recommended that Mr. Frick undergo a new

13 neuropsychological exam before returning to work.  Id.  Although Ms. Ball estimates that

14 the current wait time to schedule such an exam is almost three months, Mr. Frick's exam

15 was able to be conducted on September 5 and 6, 2006.  Id. at ¶¶ 5-6.  UW received the

16 neuropsychological evaluation from Dr. Myron Goldberg on October 10, 2006, and Ms.

17 Ball stated that a one month or more delay in receiving such a report is not unusual.  Id.

18 at ¶ 7.

19      After receiving Dr. Goldberg's report, Ms. Ball and Dr. Johnson completed their

20 evaluation of Mr. Frick and submitted their completed report to the JPLRC on November

21 3, 2006.  Id. at ¶ 9.  On November 10, 2006, the JPLRC reviewed the UW report and

22 determined that further evaluation was needed, Lizama Decl., docket no. 28, at Ex. 2(f),

23

and the JPLRC requested clarification of the UW report.  Ball Decl. at ¶ 9.  On November 20, 2006, Ms. Disotell emailed Ms. Ball to inquire on the status of UW's supplemental report, and Ms. Ball replied that the report was near completion.  Id. at ¶ 11.  On November 21, 2006, UW submitted a supplemental report to the JPLRC dated November 17, 2006.  Id. at ¶ 12; Ex. D.  By letter dated November 22, 2006, the JPLRC sought further clarification of the UW report regarding the UW's determination that Mr. Frick could do certain jobs as well as the recommendation that Mr. Frick be retrained on equipment.  Id. at ¶ 13 and Ex. E.

Mr. Frick contends that following the supplemental report, "the accommodation process completely broke down."  Frick's Opposition, docket no. 35, at 18.   First, Mr. Frick asserts that the issues raised in the November 22 JPLRC letter were not germane to the accommodation request.  Second, he states that UW did not respond to the letter until February 2, 2007.  However, the evidence is to the contrary.

Ms. Ball stated that the questions raised by the JPLRC in the letter were valid, because jobs on the waterfront can be dangerous and the JPLRC's concern for safety was reasonable.  Ball Decl. at ¶ 13.  Furthermore, the evidence indicates that the JPLRC remained in contact with UW between November 22, 2006, and February 2, 2007.

On December 15, 2006, Ms. Ball and Dr. Johnson participated in a conference call with the JPLRC to discuss UW's supplemental report and the JPLRC's requests for further clarification.  Id.at ¶ 14.  Ms. Ball and Dr. Johnson agreed to provide a report summarizing the conversation and their recommendations.  Id.

On January 17, 2007, Deb Lecuyer of PMA emailed Ms. Ball regarding the status

1    of the report and was informed that the report would be finished soon.  <u>Id.</u> at ¶ 15.  The

2    report was completed on February 2, 2007.  <u>Id.</u> at ¶ 16.  The final report reiterated that

3    UW was unable to provide a definitive statement about specific tasks Mr. Frick could or

4    could not do, and recommended a gradual reentry to work.  <u>Id.</u>

5         On February 22, 2007, the JPLRC reviewed the final UW report and agreed to

6    refer Mr. Frick's accommodation request to the Joint Coast Labor Relations Committee

7    for final determination.  Lizana Decl. Ex. 2(o).  Although the referral was dated March 5,

8    2007, it apparently did not reach the Coast committee until March 30, 2007.  <u>Id.</u> Ex. 2(p).

9    On March 9, 2007, Mr. Frick submitted a temporary accommodation request, which was

10    approved by the JPLRC on March 15, 2007.  <u>Id.</u> Ex. 2(r).  The temporary accommodation

11    waived the skill rule, availability rule and 23-hour rule.  <u>Id.</u>  Mr. Frick returned to work

12    on April 4, 2007.  Frick Deposition, Montoya Decl. Ex. B, docket no. 40-1, at 86:2-4.  On

13    September 6, 2007, the Joint Coast Labor Relations Committee agreed to extend the

14    temporary accommodations.  Lizana Decl. Ex. 2(w).

15    **C. Plaintiff Narad Rao**

16         On January 16, 2005, Plaintiff Narad Rao suffered an on-the-job head injury while

17    working at Jones Stevedoring Company, a member of PMA.  Although Mr. Rao

18    attempted to return to work following his injury, he experienced difficulties and was out

19    of work for a period of time.  On November 20, 2006, Mr. Rao submitted an

20    accommodation request to the JPLRC.  Mr. Rao's request, Ewan Decl. Ex. 14, mirrored

21    both the limitations and the requests identified in the request submitted by Mr. Frick, as

22    discussed above.  On December 15, 2006, Mr. Rao met with the JPLRC to discuss his

23

1    request.  On December 18, 2006, the JPLRC referred Mr. Rao to UW for evaluation

2    regarding his request.

3            On January 23, 2007, Mr. Rao met with Dr. Johnson and Ms. Ball at UW.  Ball

4    Decl. at ¶ 17.  There is some dispute regarding when UW received the 2005

5    neuropsychological assessment completed by Dr. Edwin Hill, Mr. Rao's treating doctor.

6    Ms. Ball states that UW contacted Dr. Hill to determine if additional testing had been

7    done, and that it was not until March 9, 2007, before UW received the additional release

8    needed to get further records from Dr. Hill.  Ball Decl. at ¶ 18.  Dr. Hill states that he

9    faxed a copy of his 2005 report to Ms. Ball on January 23, 2007, and had no further

10   contact with anyone at the UW regarding Mr. Rao.  Hill Decl., docket no. 44, at ¶¶ 5-6.

11           Mr. Rao contends that the accommodation process languished for five months.

12   Rao Opposition, docket no. 36, at 14-15.  However, a review of the evidence shows that

13   Defendants did not obstruct the process in any way and any delay between Mr. Rao's

14   appointment at UW and action by the JPLRC cannot be traced to action or inaction on the

15   part of Defendants.  On the contrary, as discussed below, the evidence shows that

16   Defendants kept in contact with UW in order to receive the necessary information.

17           On March 16, 2007, Ms. Ball informed Ms. Lecuyer at PMA that they were

18   working on their report and it should be complete soon.  Ball Decl. at ¶ 19 and Ex. I.  On

19   May 3, 2007, Ms. Lecuyer emailed Ms. Ball to check the status of the report, and on May

20   11, 2007, Ms. Ball replied that the report should be available the following week.  Id. at ¶

21   20.  On May 18, 2007, the completed report was sent to the JPLRC.  Id. at ¶ 21; Ex. K.

22   Similar to the recommendations regarding Mr. Frick, the UW report recommended a

23

ORDER - 7

1 gradual return to work without specifying certain jobs that Mr. Rao could or could not do.

2 Id.

3        On May 24, 2007, the JPLRC reviewed the UW report and agreed to refer Mr.

4 Rao's accommodation request to the Joint Coast Labor Relations Committee for final

5 determination.  Lizana Decl. Ex. 3(k).  On June 20, 2007, the JPLRC sent the referral to

6 the Coast committee.  Ewan Decl. Ex. 17.  On June 29, 2007, Mr. Rao submitted a charge

7 of disability discrimination to the Equal Employment Opportunity Commission in

8 Seattle.  Montoya Decl. Ex. E.

9        On July 9, 2007, the JPLRC mailed Mr. Rao the JPLRC policy on temporary

10 accommodations and the required forms for submitting a request.  Lizana Decl. Ex. 3(n).

11 Mr. Rao submitted his temporary accommodation request on July 26, 2007, and it was

12 granted on July 31, 2007.  Ewan Decl. Ex. 18.  Mr. Rao returned to work on August 1,

13 2007.  Rao Deposition, Montoya Decl. Ex. D, at 117:5-9.  On September 6, 2007, the

14 Joint Coast Labor Relations Committee approved the suggested accommodations.  Id. Ex.

15 19.

16        **D.  Procedural History**

17        Plaintiffs filed the present complaint on December 19, 2012, alleging that

18 Defendants violated the ADA by failing to process Plaintiffs' requests for

19 accommodations timely and in good faith.  Pending before the Court are Local 23's

20 motion for summary judgment as to Mr. Frick, docket no. 19, Local 23's motion for

21 summary judgment as to Mr. Rao, docket no. 20, and PMA's motion for summary

22 judgment as to both Plaintiffs, docket no. 25.  Defendants assert that summary judgment

23

ORDER - 8

1   is proper because (1) Plaintiffs are not entitled to an accommodation that would violate a

2   collectively bargained seniority system, and (2) the JPLRC acted diligently and in good

3   faith in evaluating the accommodation requests.[1]

4   **Discussion**

5       **A.  Standard of Review**

6       Summary judgment is appropriate when there is no genuine dispute as to material

7   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

8   56(a).  The moving party bears the initial burden of demonstrating the absence of a

9   genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A

10  fact is material if it may affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>,

11  477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party

12  must present "affirmative evidence," which "is to be believed" and from which all

13  "justifiable inferences" are to be favorably drawn.  <u>Id.</u> at 255, 257.  When the record,

14  taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

15  summary judgment is warranted.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475

16  U.S. 574, 587 (1986).

17      **B.  Accommodation Violating a Seniority System**

18      Defendants argue that Plaintiffs' requested accommodation was not reasonable

19

20

21  [1] Defendants also argue that summary judgment is proper because a paid temporary leave of absence is a reasonable accommodation.  The Court notes, without making any finding on the issue, that a paid leave of absence can be a reasonable accommodation and that Plaintiffs received payment from an industry fund to compensate them for lost wages while off work, in addition to worker's compensation benefits received from their employers.

22

23

1    under the ADA because it would violate an established seniority system.  In general, a

2    "showing that the assignment would violate the rules of a seniority system warrants

3    summary judgment for the employer -- unless there is more. The plaintiff must present

4    evidence of that 'more,' namely, special circumstances surrounding the particular case

5    that demonstrate the assignment is nonetheless reasonable."  US Airways, Inc. v. Barnett,

6    535 U.S. 391, 406 (2002).

7        Plaintiffs concede that a bona fide seniority system exists here, but argue that they

8    have evidence of "more," given that the JPLRC eventually allowed the accommodation.

9    Frick's Opposition at 21.  Plaintiffs argue that by allowing the accommodation, it must be

10   assumed that the JPLRC determined that the request did not violate seniority rules.  Id. at

11   22.  At the very least, Plaintiffs have raised a genuine issue of material fact precluding

12   summary judgment on the issue of whether the requested accommodation is unreasonable

13   as violating established seniority rules.

14       **C.  Unreasonable Delay in Accommodation Process**

15       Pursuant to the ADA, an employer may not discriminate against a qualified

16   individual with a disability.  42 U.S.C. § 12112(a).  Discrimination includes not making

17   reasonable accommodations to the known physical or mental limitations of an otherwise

18   qualified employee, unless the employer can demonstrate that the accommodation would

19   impose an undue hardship on the operation of its business.  42 U.S.C. § 12112(b)(5)(A).

20   In this case, Defendants ultimately provided the requested accommodations to Plaintiffs,

21   and the only issue is whether Defendants unreasonably delayed the accommodation

22   process.

23

ORDER - 10

1   Although unreasonable delay in providing an accommodation can provide

2   evidence of discrimination, summary judgment is proper if the employer acted reasonably

3   and in good faith.  Jay v. Intermet Wagner, Inc., 233 F.3d 1014, 1017 (7th Cir. 2000)

4   (affirming summary judgment in favor of the employer, despite 20 month delay in

5   implementing requested accommodation, and holding that employer acted reasonably and

6   in good faith by keeping plaintiff on medical leave and considering him weekly for an

7   open position); Clayborne v. Potter, 448 F. Supp. 2d 185, 193 (D.D.C. 2006) (granting

8   summary judgment for the employer, despite 12 month accommodation process).

9   Each of the Plaintiffs suffered traumatic brain injuries.  The effect of the injuries

10  raised serious questions as to what jobs they could perform.  Although each Plaintiff was

11  provided an accommodation and returned to work, Plaintiffs contend that the delays were

12  unreasonable.  Defendants do not dispute that approval of Plaintiff's requested

13  accommodations took longer than Defendants' ADA accommodation policy would

14  contemplate.[2]  However, Defendants argue that they engaged in the interactive process in

15  good faith and acted reasonably.

16  The JPLRC received Plaintiffs' accommodation requests, referred Plaintiffs to

17  specialists at UW, and reviewed written reports from the medical specialists outlining

18  their evaluation of Plaintiffs' limitations.  Defendants engaged in the interactive process

19  _____

20  [2] The Defendants' policy on ADA accommodations, found at Montoya Decl. Ex. A, docket no. 39-3, pages 4-7, sets forth various timelines for each step in the accommodation process.  However, the policy

21  makes clear that the timelines are to be followed "in the absence of unusual circumstances."  Defendants have presented evidence that this was the first time the JPLRC had dealt with a request for

22  accommodation following a brain injury, making the evaluation process more complicated.  Ball Decl. at ¶¶ 5, 9

23

ORDER - 11

1  to understand each Plaintiff's complicated brain injury and provide accommodations in a

2  way that was safe for Plaintiffs and those working around them.

3        Defendants requested clarification regarding Plaintiffs' limitations and

4  accommodation requests, regularly followed up with the UW experts to inquire on the

5  status of the evaluations, and promptly approved Plaintiffs' accommodation requests

6  once Defendants' questions and concerns had been addressed.   To the extent that there

7  were delays in the process, there is no evidence that Defendants were responsible for

8  those delays.  Any delays generally occurred when the JPLRC was waiting for expert

9  reports from the UW.  The evidence shows that Defendants diligently followed up with

10  UW in order to ensure the accommodation process continued.

11        Furthermore, Defendants presented evidence that brain injuries, as opposed to

12  many other types of injuries requiring accommodations, require additional evaluations

13  and are complicated and difficult.  Ball Decl. at ¶¶ 5, 9.  In addition, neither the UW nor

14  the JPLRC had ever dealt with an individual seeking a disability accommodation to

15  return to work following a traumatic brain injury.  Id. at ¶ 9.  UW was unable to provide

16  clear guidance on what Plaintiffs could or could not do, id. at ¶ 14, making it more

17  challenging for Defendants to determine how to safely accommodate Plaintiffs'

18  limitations.

19        All parties here agree that working on the waterfront is dangerous and that

20  Defendants have a duty to ensure the safety of all workers.  The nature of Plaintiffs'

21  injuries raised legitimate concern for Defendants, as it was unclear exactly what jobs

22  Plaintiffs could and could not do and uncertain whether Plaintiffs could react

23

ORDER - 12

1   appropriately to potential dangers encountered on the job.

2          In opposing summary judgment, Plaintiffs offer no evidence that Defendants

3   failed to act in good faith and fail to raise any specific facts showing there is any genuine

4   issue for trial.  Plaintiffs instead point to various delays and attempt to characterize those

5   delays as indicative of Defendants' failure to engage in the interactive process.  For

6   example, Plaintiff Frick points to the 72 day delay between the November 22, 2006, letter

7   from the JPLRC requesting further clarification and the UW final report on February 2,

8   2007.  Frick's Response to Local 23, docket no. 35, at 19.  However, Mr. Frick does not

9   discuss or dispute the evidence in the record that within that period, there was a

10  conference call between the JPLRC and UW and an email exchange regarding the status

11  of the final report.  Despite Mr. Frick's attempt to characterize the interactive process as

12  having broken down, viewing the evidence in its entirety can lead to only one reasonable

13  conclusion, which is that Defendants engaged in the interactive process in good faith,

14  continued following up with UW whenever items were delayed, and approved Plaintiffs'

15  accommodation requests after serious and legitimate concerns had been resolved.

16         Delay alone does not establish a violation of the ADA or raise a genuine issue of

17  material fact precluding summary judgment.  Plaintiffs must put forth some affirmative

18  evidence tending to show that Defendants acted unreasonably or failed to act in good

19  faith throughout the interactive process.  In this case, Defendants engaged in the

20  interactive process to accommodate Plaintiffs' disabilities, and the process simply took an

21  extended period of time.  The Court concludes that the record, taken as a whole, could

22  not lead a rational trier of fact to find for Plaintiffs, and summary judgment is warranted.

23

1    **<u>Conclusion</u>**

2          For the foregoing reasons, the Court GRANTS Defendant Local 23's motions for

3    summary judgment, docket nos. 19 and 20, and GRANTS Defendant PMA's motion for

4    summary judgment, docket no. 25.  The Court DISMISSES the case with prejudice.

5          DATED this 14th day of March, 2014.

6

7

8                                               Thomas S. Zilly
                                                United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 14